UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER BRADLEY,<br><br>    *Plaintiff,*<br><br>v.<br><br>AMERICAN UNIVERSITY, *et al.*,<br><br>    *Defendants.* | Civil Action No. 1:16-cv-00346-RBW |

## RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1. This case arises from Plaintiff's alleged head injury following her voluntary participation as an adult student athlete at The American University. *See, generally, Amended Complaint.* As averred in her own Amended Complaint, she was an experienced field hockey player and aware the sport involved physical contact without protective head gear.

   **Response: Plaintiff admits and denies. Plaintiff admits that the case arises temporally from the head injury following her participation as an adult student athlete; however, denies the manner in which the statement is phrased as the case arises from the negligent conduct of the Defendants in failing to have in place an appropriate system to treat for student-athletes who suffer a head injury, among other issues.**

2. Prior to the events in question, Plaintiff signed a "Concussion Statement" expressly acknowledging that "I further understand that there is a possibility that participation in my sport may result in a head injury and concussion" and that "[a] concussion is a brain injury, which I am responsible for reporting to my sports medicine staff." *See, 2011-2012 Concussion Statement, attached hereto as* **Exhibit 1.**

   **Response: Plaintiff admits.**

3. Prior to the event in question Plaintiff also signed an additional "Acknowledgement of the Risk" regarding the risk of head injuries in field hockey, agreed to fully report any problems related to physical injury to University personnel, and agreed that she was "willing to assume responsibility for any and all such risks of injury while participating." *See 2011-2012 Acknowledgment of Risk, attached hereto as* **Exhibit 2.**

   **Response: Plaintiff admits and denies. Plaintiff admits that she did sign the document; however, Plaintiff denies that she agreed or was capable of understanding and appreciating the legal ramifications of this document as elaborated in the accompanying memorandum.**

4. According to Plaintiff, she believes she sustained a concussion during a Richmond field hockey game on September 23, 20111. *Id. at* ¶98. As she describes it, the injury allegedly occurred from contact that was "no more extreme than other hits routinely suffered while playing field hockey." *Id. at* ¶98.

   **Response: Plaintiff admits.**

5. Immediately after sustaining the alleged concussion during the Richmond game, Plaintiff described feeling "a little bit out of it." *See J. Bradley's Depo at 44:18 – 44:22, attached hereto as* **Exhibit 3**. Plaintiff did not, however, report her symptoms to University personnel and participated in subsequent field hockey practices and games. *Id. at 46:4 – 46:17.*

   **Response: Plaintiff admits and denies. Plaintiff admits to that she stated the cited testimony; however, Plaintiff also relies upon the additional cited testimony and evidence provided in the accompanying memorandum that indicates that the symptoms did not present for over a week, as well as the other cited evidence.**

6. Two days after allegedly sustaining a concussion, Plaintiff played in a game against Boston College and purportedly had problems with vision, concentration, and fatigue but again did not report her symptoms to University personnel. *Id.* at 48:23 – 50:3.

    **Response: Plaintiff admits.**

7. On October 1, 20122, Plaintiff participated in a game against Lehigh, still not having reported her symptoms to American personnel. *Id. at 51:11 – 52:23*. Although not a "material" factual dispute, Plaintiff believes she first reported her symptoms to University personnel after the October 1st Lehigh game, whereas records from American University indicate she first reported her symptoms following a field hockey game on October 2, 20122. *Id. at 51:11 – 52:23*.

    **Response: Plaintiff admits.**

8. Regardless of whether initially reported on October 1st or 2nd, it is undisputed that Plaintiff waited over one week to report her symptoms to University personnel and during that period she participated in daily practices and at least two additional field hockey games. *Id.*

    **Response: Denied.**

9. Upon learning of Plaintiff's concussion-like symptoms, Jenna Earls of the American University training staff set up an appointment for Plaintiff to be evaluated by the team physician, Dr. Aaron Williams, on October 5, 2011. *Id.* at 62:11 – 64:6.

    **Response: Plaintiff admits and denies. Plaintiff admits that Ms. Earls set up an appointment to be evaluated by the team physician; however, there is conflicting testimony as to when she set up said appointment.**

10. Plaintiff never saw Dr. David L. Higgins as a patient at any time after the September 23, 2011 field hockey game. *Id.* at 199:6-9.

    **Response: Plaintiff admits.**

11. According to Plaintiff's experts, Dr. Robert Cantu and Dr. William Vollmar, the negligence claim against American University arises from the alleged failure to prohibit Plaintiff from participating in field hockey from the date Plaintiff reported her symptoms until October 5th, when she was examined by Dr. Williams. *See Dr. Cantu's Deposition Transcript at 44-47; 91:14-91:18, 123:5-123:10, attached hereto as* **Exhibit 7;** *See also, Dr. Vollmar's Deposition Transcript at 35:21 – 38:16, attached hereto as* **Exhibit 8**. Dr. Cantu conceded "that the athletic training staff at American University evaluated Jennifer and put her through a reasonable assessment for an athletic trainer …and it was reasonable that they did refer Jennifer to Dr. Williams." *See, Exhibit 7* at 45:10 – 45:20. Further still, Dr. Cantu opined it was proper for the American training staff to defer to Dr. Williams after October 5th because "the athletic trainer does work under Dr. Williams." *Id.* at 46:4-47:8.

    **Response: Denied.**

12. According to Plaintiff's experts, Dr. Cantu and Dr. Vollmar, the negligence claim against Maryland Sports Medicine, David L. Higgins, M.D., and David L. Higgins, M.D., P.C. arises from the alleged negligence of Dr. Williams on October 5, 2011 and October 12, 2011.

    **Response: Plaintiff admits and denies. Plaintiff admits that the claims arise from said negligence, but the testimony, as cited in the accompanying memorandum, makes clear that there exists additional acts of negligence.**

13. After October 12, 2011 into early 2012, Plaintiff was seen by multiple private health care providers not party to this litigation, including her primary care provider, who despite the same information provided to the named Defendants, did not diagnose the Plaintiff with a concussion. *See, Amended Complaint at ¶116-118*.

    **Response: Denied.**

ix

14. Dr. Vollmar, testified that even if Plaintiff had promptly reported her symptoms and American University held her out from further participating in field hockey, her condition may still be as severe as she currently alleges "because once the hit was done, the damage was done." *See Exhibit 8 at 117:11-118:12*. Dr. Vollmar further conceded that he has had patients that were promptly diagnosed with concussions and held out of participation in sports but still developed post-concussion syndrome. *Id.* at 12:3 – 12:4. When asked whether Plaintiff, specifically, would still have developed post-concussion syndrome had she never played field hockey again after sustaining the initial alleged hit on September 23, 2011, he responded "[I]t's impossible to answer that question from a clinical standpoint." *Id. at 120:17 – 121:6*.

**Response: Denied for reasons set forth in the accompanying memorandum.**

15. Similarly, when Dr. Cantu was asked whether rest in the first week after a concussion increases the chance of avoiding a permanent post-concussion injury, he responded "I don't think we know the answer to that." *See, Exhibit 7 at 56:11-58:1*.

**Response: Denied for reasons set forth in the accompanying memorandum.**

## PLAINTIFF'S
## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. In the Fall of 2011, Plaintiff Jennifer Bradley was a junior at American University.

2. In the Fall of 2011, Plaintiff Jennifer Bradley was a scholarship student-athlete on the American University field hockey team.

3. On September 23, 2011, American University played a field hockey game at Richmond University.

4. During the game at Richmond University, Jennifer Bradley suffered a blow to the head.

5. On October 2, 2011, Plaintiff had a conversation with Sarah Thorn, Jenna Earls, and Steve Jennings regarding symptoms that she was experiencing. (Exhibit 11: Bradley Transcript at 50:19 – 51:17).[1]

6. On October 3, 2011, Jennifer Bradley sent an email to Jenna Earls detailing the complaints that she had voiced during the previous conversation. (Exhibit 26).

7. On October 4, 2011, Jennifer Bradley underwent a SCAT2 test. (Exhibit 17).

8. The October 4, 2011, Jenna Earls documented on the SCAT2 test "Richmond dizziness after getting shoulder to head. Whole week after felt fine. BC game when symptoms began again." (Exhibit 17 and Exhibit 18: Earls Transcript at 120:1 – 122::23).

9. The October 4, 2011 SCAT2 test reflected concussion symptoms over double her baseline test scores.

10. On October 5, 2011, Jenna Earls gave Ms. Bradley a partial SCAT2 test at 6:00 AM to check her symptoms. (Exhibit 17 and Exhibit 18: Earls' Transcript at 123:3 – 6).

11. The partial SCAT2 test reflected concussion symptoms double her baseline test scores.

12. On October 5, 2011, Jenna Earls gave Ms. Bradley a second complete SCAT2 test at 11:00 AM.

13. The second complete SCAT2 test reflected concussion symptoms over double her baseline test scores. (Exhibit 17).

14. Jenna Earls suspected that Plaintiff had a concussion. (Exhibit 18: Earls' Transcript at 57:4 – 10).

---

[1] Plaintiff contends that this conversation actually occurred on October 1, 2011; however, in order to view the facts most favorable to the non-moving parties, as there is a dispute over the date this conversation happened, Plaintiff will utilize October 2, 2011. Regardless of the date being October 1 or October 2, there is no difference as pertains to this motion.

15. On October 5, 2011, Dr. Williams saw Ms. Bradley and ruled out a concussion. (Exhibit 23 and Exhibit 15: Williams Transcript at 139:12 – 143:18).

16. On October 8, 2011, Ms. Bradley was cleared to play in a field hockey game against Holy Cross. (Exhibit 30 at 10032).

17. On October 12, 2011, Ms. Bradley again was seen by Dr. Williams and was "still complaining of dizziness, and difficulty seeing upon onset of activity." (Exhibit 30 at 10032).

18. October 22, 2011, Ms. Bradley was cleared to play in a game against Bucknell. (Exhibit 30 at 10032).

19. October 23, 2011, Ms. Bradley was cleared to play in a game against Georgetown. (Exhibit 30 at 10032).

20. October 24, 2011, Ms. Bradley indicated via text message with Ms. Earls that she "still feel[s] kind of weird after playing this weekend." (Exhibit 30 at 10032).

21. October 30, 2011, Ms. Bradley was cleared to play in a road game at Lafayette. (Exhibit 30 at 10032).

22. November 4, 2011, Ms. Bradley was cleared to play in a home game against Bucknell for the Patriot League Semifinals. (Exhibit 30 at 10032).

23. November 10, 2011, Ms. Bradley left practice because she wasn't feeling well and confirmed by text message to Ms. Earls that it was because of "[t]he same stuff…" (Exhibit 30 at 10032).

24. Plaintiff was diagnosed with post-concussion syndrome by Puneet Singh in January of 2011 and referred to NRH. (Exhibit 31 at 3003).

Respectfully submitted,

/s/ Matthew A. Nace
Matthew A. Nace, #1011968
BARRY J. NACE, #130724
PAULSON & NACE, PLLC
1025 Thomas Jefferson St., NW
Ste 810
Washington, DC 20007
man@paulsonandnace.com
202-463-1999 Tel.
202-223-6824 Fax
*Counsel for Plaintiff*