# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JENNIFER BRADLEY,

    *Plaintiff,*

v.

NCAA, *et al.*,

    *Defendants.*

Civil Action No. 1:16-cv-00346-RBW

## PLAINTIFF'S
## MOTION FOR RELIEF

**COMES NOW** Plaintiff, by and through undersigned counsel, and respectfully submits to this Honorable Court her Motion for Relief. In support thereto, Plaintiff states the following:

On May 4, 2021, the parties participated in a virtual hearing to argue Defendant USA's Motion to Amend its Answer in order to assert the affirmative defense of waiver for the first time in over seven years. The Court granted that motion but indicated that it would allow Plaintiff to submit a motion discussing why additional discovery would be needed as a result of this hearing. The Court then issued ECF Doc. No. 157 allowing Plaintiff to brief 1) what specific addition discovery regarding the exculpatory clause was needed; 2) the reasons for which an expert witness would be appropriate; and 3) the expected scope for an expert witnesses' testimony. Plaintiffs submit the following:

The record is well established that in this case Dr. Williams was a federal employee seeking medical education though his federal employer; Dr. Williams was selected as a fellow to work and train under the guidance of Dr. Higgins through a Memorandum of Understanding; Dr. Higgins had also entered into a contract with American University to act as the university's team physician. There was no contractual relationship between Dr. Higgins and Dr. Williams. There was no contractual relationship between American University and Dr. Williams. There was no contractual relationship between American University and the United States of America. There was no contractual relationship

between Dr. Williams and Jennifer Bradley. There was no contractual relationship between Dr. Higgins and Jennifer Bradley. There was no contractual relationship between the United States of America and Jennifer Bradley. All that exists is an Acknowledgement of Risk form that Jennifer Bradley was required to execute in order to be allowed to play field hockey at American University. The language of the form states the following:

> "I (including my parents, legal guardians, and legal representatives) hereby agree to indemnify, defend and hold harmless the University and its employees, officers, agents from any claim, demands, or suits for damages which may arise from my participation in the University's Intercollegiate Athletic Program, or from any treatment, medical, or otherwise provided to me by the University's Sports Medicine Staff. Further, I absolve, indemnify, defend and hold harmless American University from any breach of these presentations."

Dr. Williams/USA never raised this waiver as an affirmative defense in this matter. Dr. Williams therefore was not subjected to his knowledge of the form and any relief that it may have provided to him. Furthermore, Plaintiffs were not allowed to depose Dr. Williams on his "agency" with respect to the form. Plaintiffs did inquire of Mr. Dash if Dr. Williams was a member of the Sports Medicine Staff and, while the answer appeared clear during his deposition that Mr. Dash did not consider him a member of the staff, the Court determined otherwise. Had Defendant USA asserted waiver at its defense, Plaintiff would have focused more intently on Dr. Williams' agency status with specific attention to the form itself. Instead, Plaintiff inquired of Dr. Williams his role at American University, and Dr. Williams indicated that he was never given access to the medical records at American University and that he reported solely to Dr. Higgins.

Plaintiff believes that direct discovery on Dr. Williams' knowledge of the form and agency status at American University was necessary to fully flush out this issue. Today, however, over seven years since the filing of the complaint and over 10 years since the facts of the case, no matter how honest and trustworthy the Court may presume Dr. Williams to be, it will be next to impossible to receive accurate testimony from Dr. Williams. At the time of the filing of Defendant's Answer and

throughout all discovery, Dr. Williams never asserted that he was aware of or afforded a right to waiver under this form. Any weight to any testimony that Dr. Williams might give on this issue could not possible be considered significant unless he were to testify that he does not recall. That is the only believable answer.

Likewise, because Defendant USA never sought this affirmative defense, Plaintiffs do not even know what witnesses would be able to speak to the waiver clause and the government's knowledge of its existence or application to Defendant USA prior to the Court's opinion dismissing the other parties to this case. It is thus impossible for Plaintiffs to inform this Court what depositions would need to be taken to flush out this issue. At a minimum, a corporate designee deposition would be required to testify to who know of this defense, when was it known, what facts were applicable to any such assertion, and why it was never raised before. Additionally, discovery must be made upon American University to understand who knew of Dr. Williams' actions in this matter and whether he was an intended beneficiary of this form.

These issues are important because at best, Defendant USA is attempting to claim that Dr. Williams was an unaware third-party beneficiary. As stated by the D.C. Court of Appeals, intended third-party beneficiaries must be identified to a release. *Woodfield v. Providence Hosp.* 779 A.2d 933 (D.C. 2001). The Court of Appeals later interpreted *Woodfield* in indicating that "third party beneficiary status *requires* that the contracting parties had an express or implied intention to benefit directly the party claiming such status." *Presley v. Commer. Moving & Rigging, Inc.* 25 A.3d 873, FN 14 (2011)(emphasis added). Headnote 5 of *Presely* also expressly states that "[a]n indirect interest in the performance of the undertakings' is insufficient." Likewise, Judge Facciola for this very Court interpreted *Woodfield* for the proposition that "third party beneficiary status existed when the release **specifically** named beneficiaries and when they directly benefited from performance." *United States ex rel. Miller v.*

*Holzmann*, 2006 U.S. Dis. LEXIS 58266 (D.D.C. 2006)(emphasis added). Plaintiff certainly never offered any express or implied intention to benefit Dr. Williams or the U.S.A. to this form.

Thus, there is a contractual question that exists in this circumstance: who were the intended third-party beneficiaries and can this release be interpreted to encompass a fellow who had no affiliation whatsoever with the parties to the contract at the time of its formation and to whom the parties did not expressly consent to benefit from it. This would be the area of expertise for an expert witness to opine.

It should also be of note to this Court that because this issue was never raised and before the Court, Plaintiff was not even offered an opportunity to file a motion for summary judgment on the issue.

The Court has asked for briefing on this matter, and these are the issues that Plaintiff sees; however, Plaintiff still maintains that the government's failure to raise this affirmative defense until after the Court turned the clock on this case back to the 23:59:59 hour is considerably unjustified and is going to do nothing but delay the proceedings. Plaintiff does not want her trial date moved and should not be asked to consider making a decision to move it or to partake in further discovery. She has been waiting for seven years for her day in court with a brain injury that she suffered as a result of Dr. Williams' negligence approximately 10 years ago. While Plaintiffs are requesting the ability to conduct this discovery knowing that the bell has already been rung and cannot be unrung, Plaintiff believes the true measure of just action in this case was to have denied Defendant's motion and to have had Defendant USA actually answer the question as to why it was that they waited over seven years to assert this defense and how it can possibly claim that good cause existed for such undue delay.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court grant this relief.

        Respectfully submitted,

        <u>/s/Matthew A. Nace</u>
        Matthew A. Nace, #1011968
        BARRY J. NACE, #130724
        PAULSON & NACE, PLLC
        1025 Thomas Jefferson St., NW
        Ste 810
        Washington, DC 20007
        man@paulsonandnace.com
        202-463-1999 Tel.
        202-223-6824 Fax
        *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of May, 2021, a true copy of the foregoing Motion was served through the Court's ECF File System to:

Sean P. Mahard, Esq..
Special Assistant United States Attorney
U.S. Attorney's Office for D.C.
555 4th Street NW
Washington, DC  20530
Phone: (202)-252-2574
Fax: (202) 252-2599
Attorneys for USA

/s/Matthew A. Nace
Matthew A. Nace

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER BRADLEY, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN UNIVERSITY, *et al.*, <br><br> Defendants. | Case No. 1:16-cv-00346-RBW |

**PROPOSED ORDER**

This Court having consider Plaintiff's Motion for Relief and any Opposition thereto, and it being the _____ day of _____, 2021, it is hereby

**ORDERED** that the Motion is Granted and Plaintiff shall be allowed to re-depose Dr. Williams, conduct a Rule 30(b)(6) Deposition of the Defendant, and be granted leave to add an expert on the contractual issues involved in this case. It is further

**ORDERED** that Defendant shall make Dr. Williams and the corporate designee available for deposition prior to July 1st and that Plaintiff shall have 60 days from receipt of the deposition transcripts of both witnesses to file a supplemental expert disclosure.

_____
The Honorable Judge Walton

Cc:   Counsel of Record